**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| NICE GLASS LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  4:21-cv-00915 |
| | ) | |
| VOESTALPINE RAILWAY | ) | |
| SYSTEMS NORTRAK LLC, | ) | |
| c/o CT Corporation System, | ) | |
| Registered Agent | ) | |
| 1908 Thomes Avenue | ) | |
| Cheyenne, WY 82001 | ) | |
| | ) | |
| Defendant. | ) | |

**COMPLAINT FOR DECLARATORY RELIEF**

COMES NOW Plaintiff NICE Glass LLC ("NICE Glass"), by and through its counsel, and

for its Complaint for Declaratory Relief pursuant to 28 U.S.C. § 2201 against Defendant

voestalpine Railway Systems Nortrak LLC ("Nortrak"), says:

**INTRODUCTION**

1.     This is a declaratory judgment action seeking a determination regarding the effect

of a Settlement Agreement and Mutual Release (the "Settlement Agreement," attached as Exhibit

1 to this Complaint), through which a prior Assignment and Assumption Agreement (the

"Assignment Agreement," attached as Exhibit 2 to this Complaint) – that assigned certain rights

and obligations under a Supply and Distribution Agreement (the "SADA," attached as Exhibit 3

to this Complaint) to NICE Glass – was rescinded and nullified.

2.     In filing this Complaint, NICE Glass seeks a declaration that the Settlement

Agreement rescinded and nullified the Assignment Agreement, and as a consequence Nortrak does

not enjoy the right to purchase 51% of the outstanding equity of NICE Glass and any claim by
Nortrak that it enjoys any such right is invalid.

## PARTIES, JURISDICTION, AND VENUE

3.      Plaintiff NICE Glass is a limited liability company engaged in the business of
making best-in-class products, including railroad ties, out of recycled plastic and virgin fiberglass.
NICE Glass was originally organized under the laws of Missouri, and in May of 2018 it became a
Delaware limited liability company.  At all relevant times NICE Glass's principal place of business
was and is in the Eastern District of Missouri.  NICE Glass's members are Timothy Noonan, Julie
Noonan, and Matthew Moore, who are all individuals and citizens of the State of Missouri, and
David Summa, who is an individual and resident of the State of California.[1]

4.      At times initially relevant to this Complaint, Nortrak was known as voestalpine
Nortrak, Inc., a Wyoming corporation with its principal place of business in Wyoming.  In 2020,
Nortrak changed its corporate name to voestalpine Railway Systems Nortrak Inc., and in 2021
Nortrak changed to a limited liability company existing under the laws of the State of Wyoming
with its principal place of business located at 1740 Pacific Avenue, Cheyenne, Wyoming 82007,
initially with its name as voestalpine Railway Systems Nortrak 1 LLC and then with its current
name effective March 26, 2021.  On its website, Nortrak does not identify any offices or plants in
the State of Missouri or the State of California, and further indicates that it is a wholly owned
subsidiary of voestalpine Railway Systems GmbH of Austria.  Pursuant to the foregoing and upon

---

[1] QRS Group LLC, is a unit holder (not a member) of NICE Glass.  Further, QRS Group is a Missouri
limited liability company whose principal place of business is in the Eastern District of Missouri and whose
members are Greg Janson, Matt Janson, Dave Bellon, and Enrico Siewart, who are all individuals and
citizens of the State of Missouri.

2

information and belief, the LLC members of Nortrak are not citizens of the State of Missouri or the State of California.

5.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) as there is complete diversity between the parties and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

6.      The parties to the Settlement Agreement agreed that this Court retains jurisdiction over the matters set forth in the Settlement Agreement for the purpose of enforcing the terms of the Settlement Agreement.

7.      Additionally, the Court has jurisdiction over Nortrak pursuant to § 506.500 R.S.Mo., in that Nortrak has transacted business within Missouri by purposefully reaching into Missouri and directed its activities toward, and claimed to have a right to purchase 51% of, the outstanding equity of NICE Glass, a business existing and operating in the State of Missouri, and this action arises out of those activities.

8.      Additionally, venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), including because a substantial number of the events giving rise to this action occurred within the District, a substantial part of property that is the subject of the action is situated within the District, and Nortrak is subject to the Court's personal jurisdiction within the District.

## GENERAL ALLEGATIONS

9.      Glass waste, also known as basement glass, cullet, or rovings, is a by-product of the manufacturing of fiberglass.  From 2016 to mid-2017, Nortrak communicated with Brian Coll ("Coll") and Coll Financial Holdings d/b/a C2 Fibers LLC ("C2 Fibers") (collectively with Renee Coll the "Coll Parties") regarding a process for converting glass waste into structural reinforced plastics ("the Process").

10.     On May 15, 2017, Nortrak and the Coll Parties executed the SADA.  The SADA defines C2 Fibers to be the "Manufacturer" and contains the following recital:

> A. Manufacturer is engaged in the business of designing, developing, engineering, manufacturing, marketing and selling products used in the railroad industry, including but not limited to railroad ties, in each case created using a composite blend of recycled plastic and *glass waste* that incorporates, is based on, or is related to the Manufacturer IP, any Updates to the Manufacturer IP (whether made by or on behalf of Manufacturer or any member of the VAE Group) ("the Business").

See SADA at p. 1 (emphasis added).  In this regard, the SADA is premised on the Process, qualifying both the "Manufacturer" and the "Business" as limited to products created from glass waste.  Under Section 10 of the SADA, Nortrak has an "option to purchase 51% of the outstanding equity of Manufacturer" at certain defined timeframes.  Id. at pp. 20-21.  NICE Glass is neither a signatory to the SADA nor defined to be the "Manufacturer" by the SADA.

11.     On June 16, 2017, NICE Glass entered into, among other agreements, an Asset Purchase Agreement ("APA," attached as Exhibit 4 to this Complaint) with the Coll Parties, through which NICE Glass purchased assets of C2 Fibers including the Process.  See APA. Through the Assignment Agreement, executed between C2 Fibers and NICE Glass on June 16, 2017, NICE Glass acknowledged that it was purchasing assets of C2 Fibers to become the "Manufacturer" under the SADA, and Timothy Noonan ("Noonan"), owner of 100% of NICE Glass's equity securities, agreed to perform the duties and obligations of Manufacturer's Equity Owner under Section 10 of the SADA.  See Assignment Agreement at p. 1.

12.     NICE Glass was not able to get the Process to work, and it did not create any viable products based on the Process.[2]  On September 7, 2018, NICE Glass filed suit against the Coll

_____

[2] In April 2018, NICE Glass made the decision to begin testing *virgin* (not waste) fiberglass for the durability that could result in the creation of viable products.

Parties seeking, among other things, rescission of the APA and the Assignment Agreement, and that litigation was subsequently removed to this Court, Case No. 4:18-cv-1835.  Additional parties, including Noonan and Nortrak, were brought into that lawsuit, and the Coll Parties filed counterclaims against, among others, NICE Glass, Noonan, and Nortrak.

13.      In April of 2021, the parties resolved their claims through the Settlement Agreement, through which, among other things: all prior agreements between the Coll Parties, NICE Glass, and Noonan – including the APA between the Coll Parties and NICE Glass, and the Assignment Agreement between C2 Fibers, NICE Glass, and Noonan – were rescinded and nullified; the Process reverted to the Coll Parties; and any obligations NICE Glass (or Noonan) might have had through the Assignment Agreement were terminated.  Although Nortrak is not a signatory to the Settlement Agreement, it attended a mediation in St. Louis that preceded the Settlement Agreement, reviewed draft settlement term sheets, and did not object to the settlement of the action but instead joined in the Joint Stipulation for Dismissal with Prejudice filed on May 4, 2021 acknowledging and approving that "all controversies in this matter between" the parties "have been settled."  An Order of Dismissal was then entered by the Court on May 5, 2021.

14.      Despite the foregoing, on July 16, 2021, Nortrak sent a letter to NICE Glass in St. Louis, Missouri, attention to Noonan, stating:

> Per Section 10.1 of the "Exclusive Supply and Distribution Agreement" dated 15 May 2017, as assigned to NICE Glass LLC ("NICE") on June 16, 2017 ("ESADA"), voestalpine Railway Systems Nortrak LLC ("Nortrak") enjoys the right to purchase 51% of the outstanding equity of NICE.  The purchase price associated with such exercise is 51% multiplied by the Valuation Formula defined in Exhibit D of the ESADA.

See Exhibit 5.

15.      By operation of the Settlement Agreement, the SADA is no longer "assigned to NICE Glass" as suggested by Nortrak.  Rather, C2 Fibers is the defined "Manufacturer" in the

SADA and the owner of the Process that underlies the SADA.  Accordingly, Nortrak's claim that it "enjoys the right to purchase 51% of the outstanding equity of NICE" Glass is invalid.

## <u>COUNT I – REQUEST FOR DECLARATORY JUDGMENT</u>

16.     Plaintiff incorporates by reference the allegations contained in paragraphs 1-15.

17.     Nortrak maintains that, by virtue of the Assignment Agreement, Nortrak "enjoys the right to purchase 51% of the outstanding equity of NICE" Glass.

18.     Conversely, NICE Glass maintains that the Assignment Agreement has been fully rescinded and nullified through the Settlement Agreement, and therefore Nortrak does not enjoy the right to purchase 51% of the outstanding equity of NICE Glass and any claim by Nortrak that it enjoys any such right is invalid.

19.     By virtue of the foregoing, there is an existing, actual, and substantial controversy between the parties within the jurisdiction of this Court having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

20.     Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, the Court may declare the rights and legal relations of these parties.

21.     As set forth herein, the Settlement Agreement rescinded and nullified the Assignment Agreement, and as a consequence Nortrak does not enjoy the right to purchase 51% of the outstanding equity of NICE Glass and any claim by Nortrak that it enjoys any such right is invalid.

**WHEREFORE,** NICE Glass respectfully requests that the Court enter a judgment declaring that the Settlement Agreement rescinded and nullified the Assignment Agreement, and that as a consequence Nortrak does not enjoy the right to purchase 51% of the outstanding equity of NICE Glass and any claim by Nortrak that it enjoys any such right is invalid, awarding NICE

Glass its costs and attorney fees, and granting NICE Glass such further relief as the Court deems just and appropriate.

Dated: July 26, 2021

Respectfully submitted,

**DOWD BENNETT LLP**

By:  /s/ Michael J. Kuhn

James F. Bennett, 46826MO
jbennett@dowdbennett.com
Michael J. Kuhn, 58936MO
mkuhn@dowdbennett.com
M. Stacy Connelly, 63465MO
sconnelly@dowdbennett.com
7733 Forsyth Blvd., Suite 1900
St. Louis, Missouri 63105
(314) 889-7300 – Telephone
(314) 863-2111 – Facsimile

*Attorneys for Plaintiff NICE Glass LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on July 26, 2021, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon all counsel of record.

 /s/ Michael J. Kuhn